IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK ZANELLA | ) | CASE NO. |
| 6589 Maplewood Rd. Apt. 304 | ) | |
| Mayfield Heights, OH  44124 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY | ) | **Jury Demand Endorsed Herein** |
| 4300 Wilson Mills Road | ) | |
| Mayfield, Ohio 44124 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Frank Zanella, by and through undersigned counsel, as his Complaint against

Defendant, states and avers the following:

## PARTIES, JURISDICTION, AND VENUE

1. Zanella is a resident of the city of Mayfield Heights, county of Cuyahoga, state of Ohio.

2. Progressive Casualty Insurance Company ("Progressive") is a domestic corporation with

   its principal place of business located at 4300 Wilson Mills Road, Mayfield, Ohio 44124.

3. Progressive was at all times hereinafter mentioned an employer within the meaning of 42

   U.S.C. 2000e *et seq.* and R.C. § 4112.01 *et seq.*

4. All of the material events alleged in this Complaint occurred in Cuyahoga County.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 in that Zanella is alleging

   federal law claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.*

6. This Court has supplemental jurisdiction over Zanella's state law claims pursuant to 28

   U.S.C. § 1367 as Zanella's state law claims are so closely related to his federal law claims



that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Zanella filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-00369 against Progressive.

9. On or about February 24, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Zanella regarding the Charges of Discrimination brought by Zanella against Progressive in EEOC Agency Charge No. 532-2022-00369.

10. Zanella received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

11. Zanella has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Zanella has properly exhausted his administrative remedies pursuant to 29 C.F.R. 1614.407(b).

## FACTS

13. Zanella is a former employee of Progressive.

14. Zanella began working for Progressive on or about September 3, 1991.

15. Progressive employed Zanella as a Manager of Central Claims.

16. As part of Zanella's managerial duties, Zanella trained new hires on site at Progressive's Mayfield location before they were released to work from home.

17. In or around April 2021, Zanella was training Paige Trout, a new hire, before she was released to work from home.



18. Due to COVID-19 safety protocols, during Trout's training, Trout and Zanella were provided with their own individual, private office space, which was separate from one another.

19. Around the end of Trout's training in late April 2021, Zanella stopped training and sent Trout on her lunch break.

20. Zanella also took his lunch break and retreated to the confines of his private office space.

21. Zanella was unpaid while on his lunch break.

22. While on his unpaid lunch break, Zanella made a scheduled, private, tele-visit to communicate with his personal therapist ("Private Therapy Conversation.")

23. Zanella believed that the call he made to his therapist was confidential.

24. Zanella did not use the speakerphone for his Private Therapy Conversation.

25. Zanella believed that by closing himself within the confines of his private office, his conversation with his therapist was private.

26. Alternatively, Zanella believed that by closing himself within the confines of his private office, the contents of his conversation with his therapist were confidential.

27. During Zanella's Private Therapy Conversation, Zanella talked with his therapist about being a gay man despite living most of his life up to that point as a heterosexual man.

28. During Zanella's Private Therapy Conversation, Zanella communicated with his therapist about developing future plans to introduce himself as an LGBTQ+ community member to his family.

29. During Zanella's Private Therapy Conversation, Zanella communicated with his therapist about his "coming out" insecurities and LGBTQ+ dating.

The Employee's Attorney.™



30. During Zanella's Private Therapy Conversation, Zanella communicated with his therapist about his insecurities as to how others would treat him after having been known for many years as a married, heterosexual man with children.

31. During Zanella's Private Therapy Conversation, Zanella communicated with his therapist about the type of men he was interested in dating.

32. Zanella had not yet disclosed his new LGBTQ+ identity to his colleagues at Progressive.

33. Zanella had not yet disclosed his new LGBTQ+ identity to members of his family.

34. Unbeknownst to Zanella, Trout spent her lunch break eavesdropping on and intercepting information from Zanella's Private Therapy Conversation ("Eavesdropping Interception of Zanella's Private Therapy Conversation.")

35. During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout was hidden behind the outside of Zanella's closed office door.

36. During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout was hidden in an office next to Zanella's.

37. Zanella could not see Trout hiding behind the outside of Zanella's closed office door.

38. Zanella could not see Trout hiding in an office adjacent to Zanella's

39. Zanella purposefully scheduled his Private Therapy Conversations during lunch when Trout was out of the office.

40. During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not make her presence behind the outside of Zanella's door known to Zanella.

41. During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not make her presence in an adjacent office known to Zanella.

The Employee's Attorney.™



42.     During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout listened to Zanella's Private Therapy Conversation from behind the outside of Zanella's closed office door.

43.     During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout listened to Zanella's Private Therapy Conversation from an office adjacent to Zanella's.

44.     Zanella did not invite Trout to listen to his Private Therapy Conversation.

45.     Zanella's therapist did not invite Trout to listen to his Private Therapy Conversation.

46.     During Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not knock on Zanella's closed door to inform him that she was listening to or could hear his Private Therapy Conversation.

47.     Alternatively, during Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not make her presence known to Zanella.

48.     Alternatively, during Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not knock on Zanella's closed door to make her presence known.

49.     Alternatively, during Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not inform Zanella that she could hear his Private Therapy Conversation.

50.     Alternatively, during Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, Trout did not inform Zanella that she was offended by the contents of his Private Therapy Conversation.



51. Alternatively, during Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation, although it allegedly offended her, Trout continued to eavesdrop on Zanella in order to intercept communication from Zanella's Private Therapy Conversation.

52. Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation was a malicious act against Zanella.

53. By performing the Eavesdropping Interception, Trout had the purpose to cause injury to Zanella.

54. Trout gossiped to other employees at the office telling them that Zanella was coming out as gay.

55. Trout injured Zanella by gossiping to other employees at the office telling them that Zanella was gay.

56. Alternatively, Trout had the purpose to cause injury to Zanella because after Trout's Eavesdropping Interception, Trout gossiped to other employees at the office that Zanella was coming out as gay.

57. Trout's "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent frustrated Zanella.

58. Trout's "outing" Zanella to his co-workers forced Zanella to disclose his LGBTQ+ status to his co-workers before he was prepared to do so.

59. Trout's "outing" Zanella to his co-workers forced Zanella to disclose his LGBTQ+ status to family members before he was prepared to do so.

60. Alternatively, a reasonable person in Zanella's position who had been involuntarily outed by a co-worker and/or subordinate employee would be frustrated.

The Employee's Attorney.™



61.   Trout's "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent was an invasion of Zanella's privacy.

62.   Alternatively, a reasonable person in Zanella's position who had been involuntarily outed by a co-worker and/or subordinate employee would find their privacy invaded.

63.   Trout's "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent was harassment against Zanella based on his sex.

64.   Trout's "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent constituted sexual harassment.

65.   Zanella was offended by Trout "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent.

66.   Trout's "outing" Zanella to his co-workers and/or subordinate employees without Zanella's consent created a hostile work environment for Zanella.

67.   Trout gossiped to other employees at the office that Zanella was going to begin dating other men.

68.   Trout did not approve of Zanella dating other men.

69.   Trout intended to injure Zanella by gossiping to other employees at the office that Zanella was going to begin dating other men.

70.   Alternatively, Trout had the purpose to cause injury to Zanella because after Trout's Eavesdropping Interception, Trout gossiped to other employees at the office that Zanella was going to begin dating other men.

71.   Trout gossiped to other employees at the office that Zanella told his therapist he did not want to date African American men.

The Employee's Attorney.TM



72. Trout injured Zanella by gossiping to other employees at the office telling them that Zanella told his therapist he did not want to date African American men.

73. Alternatively, Trout had the purpose to cause injury to Zanella because after Trout's Eavesdropping Interception, Trout gossiped to other employees at the office that Zanella told his doctor he did not want to date African American men.

74. On or about April 28, 2021, Trout anonymously reported Zanella's Private Therapy Conversation to Progressive's emergency hotline.

75. Trout injured Zanella by reporting Zanella's Private Therapy Conversation to Progressive's emergency hotline.

76. Trout made false and misleading statements in her anonymous report to Progressive's emergency hotline.

77. Alternatively, Trout had the purpose to cause injury to Zanella because after Trout's Eavesdropping Interception, Trout reported Zanella's Private Therapy Conversation to Progressive's emergency hotline.

78. Trout bragged to the other employees about having reported Zanella's Private Therapy Conversation to Progressive's emergency hotline.

79. Alternatively, Trout had the purpose to cause injury to Zanella because Trout bragged to the other employees that she reported Zanella's Private Therapy Conversation to Progressive's emergency hotline.

80. As a result of Trout's gossiping and reporting Zanella's Private Therapy Conversation to the emergency hotline, Progressive's human resources department performed an investigation.

The Employee's Attorney.™



81. As a result of Trout's reporting Zanella's Private Therapy Conversation to Progressive's emergency hotline, Patricia Harney and Christine Evans, Progressive human resources representatives, performed an investigation of Zanella's Private Therapy Conversation ("Investigation.")

82. Harney and Evans did not investigate Trout's Eavesdropping Interception.

83. Harney and Evans did not investigate Trout's false and misleading statements about Zanella.

84. Upon information and belief, Trout's false and misleading statements in her report to Progressive's emergency hotline violates Progressive's ethics policies.

85. Upon information and belief, Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation violates Progressive's ethics policies.

86. Alternatively, a Progressive employee who purposefully eavesdrops on another employee's private conversation with a personal doctor, violates Progressive's ethics policies.

87. Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation violates Progressive's harassment-free work environment policy.

88. Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation was a physical act that subsequently created a hostile work environment for Zanella based on his sex and gender.

89. Alternatively, Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation was a physical act that subsequently created a hostile work environment for Zanella based on his sex and gender.

The Employee's Attorney.™



90. On or about May 11, 2021, as a result of Harney and Evans' Investigation of Zanella's Private Therapy Conversation, Progressive unlawfully terminated Zanella's employment ("Termination.")

91. Progressive terminated Zanella because they learned that he is a gay man.

92. Alternatively, Progressive terminated Zanella because of his sexual orientation.

93. Terminating an employee because he is gay is gender discrimination.

94. Terminating an employee because of his sexual orientation is sexual orientation discrimination.

95. Zanella's Termination resulted from Trout's Eavesdropping Interception of Zanella's Private Therapy Conversation.

96. Alternatively, Zanella's Termination is an injury resulting from Trout's Eavesdropping Inception on Zanella's Private Therapy Conversation.

97. Zanella's Termination was an adverse action taken against Zanella.

98. Zanella's Termination was an adverse employment action taken against Zanella.

99. According to Progressive, Zanella was terminated for violating Progressive's code of conduct, sexual harassment policy, and non-retaliation policy.

100. Under Progressive's disciplinary policy, Zanella had not been given a verbal warning for violating Progressive's code of conduct, sexual harassment policy, and non-retaliation policy.

101. Under Progressive's disciplinary policy, Zanella had not been given a written warning violating Progressive's code of conduct, sexual harassment policy, and non-retaliation policy.

The Employee's Attorney.™



102. Under Progressive's disciplinary policy, Zanella had not been given a final written warning for violating Progressive's code of conduct, sexual harassment policy, and non-retaliation policy.

103. Under Progressive's disciplinary policy, Zanella had not be given a suspension for violating Progressive's code of conduct, sexual harassment policy, and non-retaliation policy.

104. Progressive's assertion that Zanella violated Progressive's code of conduct, sexual harassment policy, and non-retaliation policy has no basis in fact.

105. Progressive's assertion that Zanella violated Progressive's code of conduct, sexual harassment policy, and non-retaliation policy was insufficient to motivate Zanella's termination.

106. Progressive's assertion that Zanella violated Progressive's code of conduct, sexual harassment policy, and non-retaliation policy was pretext for gender discrimination.

107. Progressive's assertion that Zanella violated Progressive's code of conduct, sexual harassment policy, and non-retaliation policy was pretext for sexual orientation discrimination.

108. Progressive did not terminate Trout's employment for her Eavesdropping Interception.

109. Progressive did not terminate Trout's employment for making false and misleading statements about Zanella.

110. Alternatively, Progressive did not terminate Trout's employment because she is heterosexual.

111. Progressive's failure to discipline Trout for the Eavesdropping Interception permitted Trout's conduct to continue.

The Employee's Attorney.™



112.   Progressive's failure to discipline Trout for the Eavesdropping Interception ratified Trout's conduct.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000-e-2 *et seq.*

113.   Zanella restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

114.   Zanella is a member of a statutorily protected class based on his gender under Title VII of the Civil Rights Act of 1964.

115.   Progressive treated Zanella differently than other similarly situated employees based on his gender.

116.   Progressive discriminated against Zanella on the basis of his gender while employed with the company.

117.   Progressive terminated Zanella's employment without just cause.

118.   Progressive terminated Zanella's employment based on his gender.

119.   Progressive's discrimination against Zanella based on his gender violates Title VII of the Civil Rights Act of 1964.

120.   Zanella suffered emotional distress as a result of Progressive's conduct, and is entitled emotional distress damages pursuant to Title VII of the Civil Rights Act of 1964.

121.   As a direct and proximate result of Progressive's conduct, Zanella suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.02

122.   Zanella restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

The Employee's Attorney.™



123. Zanella is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

124. Progressive treated Zanella differently than other similarly situated employees based on his gender.

125. Progressive discriminated against Zanella on the basis of his gender while employed with Progressive.

126. Progressive terminated Zanella's employment without just cause.

127. Progressive terminated Zanella's employment based on his gender.

128. Progressive's discrimination against Zanella based on his gender violates R.C. § 4112.01 *et seq.*

129. Zanella suffered emotional distress as a result of Progressive's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

130. As a direct and proximate result of Progressive's conduct, Zanella suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: SEXUAL ORIENTATION IN VIOLATION OF 42 U.S.C. 2000-e-2 *et seq.*

131. Zanella restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

132. Zanella is a member of a statutorily protected class based on his sexual orientation under Title VII of the Civil Rights Act of 1964.

133. Progressive treated Zanella differently than other similarly situated employees based on his sexual orientation.

The Employee's Attorney.™



134. Progressive discriminated against Zanella on the basis of his sexual orientation by terminating his employment almost immediately after Progressive learned of Zanella's sexual orientation.

135. Progressive terminated Zanella's employment without just cause.

136. Progressive terminated Zanella's employment based on his sexual orientation.

137. Progressive's discrimination against Zanella based on his sexual orientation violates Title VII of the Civil Rights Act of 1964.

138. Zanella suffered emotional distress as a result of Progressive's conduct, and is entitled emotional distress damages pursuant to Title VII of the Civil Rights Act of 1964.

139. As a direct and proximate result of Progressive's conduct, Zanella suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX IN VIOLATION OF 42 U.S.C. 2000-e-2 *et seq.*

140. Zanella restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. During his employment with Progressive, Zanella was subjected to offensive and harassing conduct by Trout based on his gender and sexual orientation.

142. Trout filed false and misleading reports about Zanella's Private Therapy Conversation.

143. Trout disclosed to Zanella's co-workers and subordinates information about Zanella's gender and sexual orientation that Trout knew was private and secret.

144. Trout disclosed to Zanella's co-workers and subordinates information about Zanella's dating preferences that Trout knew was private and secret.

The Employee's Attorney.™



145.    During his employment with Progressive, Zanella was subjected to offensive and harassing conduct by Progressive based on his gender and sexual orientation.

146.    Progressive knew or should have known of the harassing conduct against Zanella.

147.    Progressive condoned, tolerated and ratified the harassing conduct.

148.    This harassing conduct was severe and/or pervasive.

149.    This harassing conduct was offensive to Zanella.

150.    This harassing conduct interfered with Zanella's ability to perform his job duties.

151.    Progressive's offensive and harassing conduct created a hostile and/or abusive work environment for Zanella.

152.    Progressive's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Zanella.

153.    Zanella suffered emotional distress as a result of Progressive's conduct and is entitled emotional distress damages pursuant to Title VII of the Civil Rights Act of 1964.

154.    As a direct and proximate result of Progressive's conduct, Zanella has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX IN VIOLATION OF R.C. § 4112.02 *et seq.*

155.    Zanella restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156.    During his employment with Progressive, Zanella was subjected to offensive and harassing conduct by Trout based on his gender and sexual orientation.

157.    Trout filed false and misleading reports about Zanella's Private Therapy Conversation.

The Employee's Attorney.™



158.    Trout disclosed to Zanella's co-workers and subordinates information about Zanella's gender and sexual orientation that Trout knew was private and secret.

159.    Trout disclosed to Zanella's co-workers and subordinates information about Zanella's dating preferences that Trout knew was private and secret.

160.    During his employment with Progressive, Zanella was subjected to offensive and harassing conduct by Progressive based on his gender and sexual orientation.

161.    Progressive knew or should have known of the harassing conduct against Zanella.

162.    Progressive condoned, tolerated and ratified the harassing conduct.

163.    This harassing conduct was severe and/or pervasive.

164.    This harassing conduct was offensive to Zanella.

165.    This harassing conduct interfered with Zanella's ability to perform his job duties.

166.    Progressive's offensive and harassing conduct created a hostile and/or abusive work environment for Zanella.

167.    Progressive's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Zanella.

168.    Zanella suffered emotional distress as a result of Progressive's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

169.    As a direct and proximate result of Progressive's conduct, Zanella has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Zanella respectfully requests this Court grant the following:

The Employee's Attorney.™



a) An order requiring Progressive to restore Zanella to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

b) An award against Progressive of compensatory and monetary damages to compensate Zanella for lost wages, back pay, front pay, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against Progressive in an amount in excess of $25,000;

d) An award of reasonable attorney's fees and non-taxable costs for Zanella claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/Fred M. Bean*
Fred M. Bean (0086756)
David E. Byrnes (0086975)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  Fred. Bean@spitzlawfirm.com
            David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff Frank Zanella*

The Employee's Attorney.TM



## **JURY DEMAND**

Plaintiff Frank Zanella demands a trial by jury by the maximum number of jurors permitted.

Respectfully submitted,

*/s/Fred M. Bean*
Fred M. Bean (0086756)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**

The Employee's Attorney.™

